UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

R.R. DONNELLEY & SONS COMPANY
and TUCKER PRINTERS, INC.,

                    Plaintiffs,                    **DECISION AND ORDER**

                                                   6:20-CV-06722 EAW

          v.

GLENN MARINO, PATRICIA
GABORSKI and MERCURY PRINT
PRODUCTIONS, INC.,

                    Defendants.

───────────────────────────────

## INTRODUCTION

Plaintiffs R.R. Donnelley & Sons Company ("RRD") and Tucker Printers, Inc. ("Tucker") (collectively "Plaintiffs") commenced this action on September 16, 2020, against defendants Glenn Marino ("Marino"), Patricia Gaborski ("Gaborski"), and Mercury Print Productions, Inc. ("Mercury") (collectively "Defendants"), arising from Marino's and Gaborski's employment with Mercury after previously working at the Tucker plant in Rochester, New York. On December 8, 2020, the Court granted Mercury's motion to dismiss all claims against it. (Dkt. 73). On December 21, 2020, Marino filed his answer to the complaint (Dkt. 77),[1] and on December 22, 2020, Gaborski filed her answer and counterclaims asserted against Plaintiffs (Dkt. 78). Currently pending before the Court is

───────────────────

[1] The parties have since stipulated to dismiss all claims against Marino with prejudice. (Dkt. 89).

Plaintiffs' motion to dismiss Gaborski's counterclaims. (Dkt. 80).  For the reasons set forth below, the Court grants in part and denies in part Plaintiffs' motion to dismiss.

## FACTUAL BACKGROUND

The following facts are taken from Gaborski's counterclaims and, as is required at this stage of the proceedings, are presumed to be true.

Gaborski was hired by Tucker as a customer service representative in November of 2011.  (Dkt. 78 at ¶ 185).  On May 5, 2020, Tucker announced that it was closing its doors during a plant-wide meeting, at which customized packets were distributed to employees that detailed severance pay for eligible employees.  (*Id.* at ¶¶ 188, 189, 190).  According to Gaborski's "Separation Pay Plan Benefits Worksheet" that she was given at the meeting, she was entitled to $6,346 in severance pay if she continued to work through July 31, 2020, a commitment which was orally confirmed at the plant-wide meeting.  (*Id.* at ¶¶ 191, 192).  Employees were encouraged to locate other employment and were told that RRD could "work something out" for the provision of severance for employees who needed to leave before July 31, 2020.  (*Id.* at 193).

Because Tucker would be transitioning customer service and inventory to multiple out-of-state RRD facilities, Tucker management encouraged Gaborski and other Tucker employees to release and relocate inventory to local New York-based facilities, as directed by the customers.  (*Id.* at ¶¶ 194, 195, 197, 198).

On the same day that Tucker announced it was closing, Gaborski was informed that RRD wanted to hire her to support Marino on its national sales team.  (*Id.* at ¶ 203).  But after that day, RRD did not extend an offer of employment to her or continue to express an

interest in retaining her as an employee. (*Id.* at ¶ 204). As a result, Gaborski sought other employment opportunities and accepted a position with Mercury on or about July 9, 2020. (*Id.* at ¶ 205). On July 20, 2020, RRD emailed Gaborski about continuing her employment with RRD, but she did not respond. (*Id.* at ¶ 206). On July 23, 2020, Gaborski was informed that she was required to stay at Tucker until October 31, 2020 to maintain eligibility for a severance package. (*Id.* at 207). On July 24, 2020, Gaborski informed human resources that she had accepted outside employment and on July 27, 2020, four days before her severance eligibility date, she was terminated from employment and not provided severance. (*Id.* at ¶¶ 208, 209).

In her counterclaims, Gaborski asserts the following claims against Plaintiffs: (1) breach of contract; (2) promissory estoppel; (3) unjust enrichment; (4) violation of Labor Law §§ 190 *et seq.*; and (5) intentional infliction of emotional distress. On January 12, 2021, Plaintiffs filed the instant motion to dismiss Gaborski's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 80). Gaborski filed her response in opposition to the motion on July 9, 2021 (Dkt. 85), and Plaintiffs filed their reply on February 19, 2021 (Dkt. 87).

For the reasons set forth below, Plaintiffs' motion to dismiss is granted in part and denied in part.

## DISCUSSION

### I.   Legal Standard

"Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a claim in a complaint." *ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*, No. 1:19-CV-7800-MKV, 2021 WL 1177532, at *19 (S.D.N.Y. Mar. 29, 2021). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted). "To state a plausible claim, the

complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

## II. <u>Plaintiffs' Motion to Dismiss</u>

As noted, Plaintiffs move to dismiss Gaborski's counterclaims for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). As a threshold matter, Plaintiffs contend that all of Gaborski's claims relating to her receipt of severance are governed and preempted by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., and/or otherwise subject to dismissal as a result of Gaborski's failure to exhaust administrative remedies in accordance with the terms of the severance plan. Following a discussion of those contentions, the Court will address each counterclaim separately.

### A. ERISA Preemption and Exhaustion of Administrative Remedies

As noted, Plaintiffs argue that ERISA, which governs employee benefit plans and employee welfare plans, including severance plans, preempts any state law claims Gaborski asserts relating to her receipt of severance pay and further, that Gaborski did not exhaust her administrative remedies by filing a proper claim for a benefit under the RRD Separation Pay Plan ("SPP").[2] To this point, they argue that the SPP expressly provides

---

[2]  Plaintiffs have attached a full copy of the SPP to their motion papers. (Dkt. 80-2). Because Gaborski attached papers referencing the SPP to her counterclaims, the Court has considered Plaintiffs' submission on this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (in deciding motion under Rule 12(b)(6), the Court may consider a document "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint" (quotations omitted)).

that a failure to properly file a written claim to the claims fiduciary "will be considered not to have exhausted all administrative remedies under the Plan . . . [resulting in] her inability to bring a legal action for that benefit." (Dkt. 80-2 at 23). The Court finds these arguments unable to be resolved at this stage of the proceedings.

ERISA was enacted because "Congress found it desirable that 'disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of [employee benefit] plans,'" *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15 (1987) (quoting 29 U.S.C. § 1001(a)), and to ensure "uniformity of regulation with respect to [these plans'] activities," *id.* (quoting H.R. Rep. No. 94-1785, p. 46 (1977)). "ERISA 'supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" *AA Med. P.C. v. Iron Workers Locs. 40, 361 & 417 Health Fund*, No. 2:20-CV-4333(DRH)(ST), 2021 WL 2895666, at \*2 (E.D.N.Y. July 9, 2021) (quoting 29 U.S.C. § 1144(a)). In other words, if a state law claim comes within the scope of claims governed by ERISA, the claim will be deemed preempted, notwithstanding how the claims are characterized by the plaintiff. *See also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with clear congressional intent to make the ERISA remedy exclusive, and is therefore pre-empted.").

In addition, absent grounds for waiver, "[c]ourts uniformly require exhaustion for claims based on violations of contractual rights protected by ERISA, such as denial of benefits." *Shamoun v. Bd. of Trustees*, 357 F. Supp. 2d 598, 602 n.3 (E.D.N.Y. 2005); *see also McQuillin v. Hartford Life & Accident Ins. Co.*, No. 20-CV-2353(JS)(ARL), 2021 WL

2102480, at *2 (E.D.N.Y. May 25, 2021) ("[P]laintiffs are not required to exhaust their administrative remedies 'where they make a clear and positive showing that pursuing available administrative remedies would be futile, . . . [and may] assert equitable defenses to the exhaustion requirement such as waiver, estoppel, and equitable tolling.'" (quoting *Kirkendall v. Halliburton, Inc*., 707 F.3d 173, 179 (2d Cir. 2013)); *Abe v. New York Univ*., No. 14-CV-9323 (RJS), 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) ("[I]t is true that courts may waive the exhaustion requirement if a plaintiff "makes a clear and positive showing that pursuing available administrative remedies would be futile" (quotation omitted)).

Here, a threshold question that cannot be resolved on the present record is whether Gaborski is even bound by the terms in RRD's SPP.  Gaborski alleges that she was employed only by Tucker and was not subject to the requirements imposed on RRD employees by the SPP.  (*See* Dkt. 1 at ¶¶ 44, 47; Dkt. 78 at ¶¶ 185, 203; *see also* Dkt. 73 ("With respect to Gaborski, the allegations in the complaint establish that she was <u>not</u> an employee of RRD.  The complaint alleges that RRD extended Gaborski an offer of employment on July 20, 2020, and she was terminated with cause on July 27, 2020, never having 'responded to RRD's offer. . . .'")).  Plaintiffs contend that "[w]hether RRD employed Gaborski is irrelevant to Gaborski's Counterclaims, and the SPP Plan is not limited to RRD employees." (Dkt. 87 at 6).  They argue that the SPP Plan defines "RR Donnelley" as "R.R. Donnelley & Sons Company and its participating subsidiaries" and that because Gaborski has admitted that RRD is the parent company of Tucker, the SPP applies to her.  But an underlying fact critical to Plaintiffs' argument that is not capable of

resolution on the instant motion is whether Tucker was a *participating* subsidiary.  Indeed, in defining who is covered under the SPP, the SPP states:  "Generally, you are covered under the Plan if:  You are employed by and considered by your employer to be an 'employee' of a participating employer (a complete list of participating employers may be obtained upon written request to the Administrator)," (Dkt. 80-2 at 8), so it is not at all a foregone conclusion that every subsidiary participated.  While Plaintiffs invite the Court to conclude that Tucker was a participating employer based on Gaborski's receipt of the "disclosure information pursuant to the Older Workers Benefit Protection Act" form which specifically references the SPP (Dkt. 78-1 at 6), taking the facts and reasonable inferences in the light most favorable to Gaborski, as the Court must, resolution of this issue in Plaintiffs' favor at this time would be inappropriate. *Zuckerham v. GW Acquisition LLC*, No. 20-CV-8742 (VEC), 2021 WL 4267815, at *3 (S.D.N.Y. Sept. 20, 2021) ("When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the [non-moving party]").

Accordingly, to the extent that Plaintiffs seek to dismiss Gaborski's counterclaims pursuant to ERISA and its requirements, the motion is denied.  The Court now turns to Gaborski's counterclaims.

### B.    Breach of Contract

In this case, Gaborski argues that her breach of contract counterclaim arises from the benefits worksheet she was given at the plant-wide meeting in tandem with the oral representations made by Tucker representatives that she would receive the severance outlined in the worksheet if she continued working for Tucker through July 31, 2020.  She

further contends that she was told that RRD could "work something out" and provide earlier severance for employees who had to leave before the July 31, 2020 separation date. She contends that these representations as a whole constituted an enforceable contract to provide the severance compensation outlined in the benefits worksheet and that Plaintiffs breached the contract by terminating her employment four days before her separation date.

The parties apply New York law to their arguments regarding Gaborski's breach of contract counterclaim.[3]   "Under New York law, a breach of contract claim has four elements: '(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'"   *Acquest Holdings, Inc. v. Travelers Cas. & Sur. Co. of*

---

[3]       Despite language in the release annexed to Gaborski's counterclaims indicating that Illinois law is to be applied (Dkt. 78-1 at 4 ("This Release shall be construed in accordance with the laws of the State of Illinois without regard to its principles of 'Conflict of Laws.'")), the parties have not addressed the issue of what state's law applies and both sides appear to assume that New York law is applicable.  On this basis, the Court may apply New York law on the instant motion.  *See Texaco A/S v. Com. Ins. Co.*, 160 F.3d 124, 128 (2d Cir. 1998) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."); *The Chefs' Warehouse, Inc. v. Emps. Ins. Co.*, No. 20 CIV. 4825 (KPF), 2021 WL 4198147, at *4 (S.D.N.Y. Sept. 15, 2021) ("Given the parties' assumption that New York law controls, 'such implied consent is sufficient to establish choice of law.'" (quoting *Sasson v. Mann*, No. 15 Civ. 6601 (CS), 2019 WL 3532155, at *5 (S.D.N.Y. Aug. 2, 2019)); *Fleisig v. ED&F Man Cap. Markets, Inc.*, No. 19CV8217 (DLC), 2021 WL 2678675, at *8 (S.D.N.Y. June 30, 2021) ("The Customer Agreement, by contrast, contains an Illinois choice of law provision and a mandatory forum selection clause requiring that any litigation arising out of or related to the Customer Agreement occur in Chicago, Illinois.  The parties' trial submissions, however, rely entirely on New York law, and no party has argued that the forum selection clause of the Customer Agreement requires litigation in Chicago.  This Court will apply New York law."); *Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 317 (S.D.N.Y. 2016) ("The Court will apply New York law in this case because '[t]he parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.'" (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)).

*Am.*, 217 F. Supp. 3d 678, 686 (W.D.N.Y. 2016) (quoting *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)).   A party may advance a breach of contract claim without satisfying the particularity required by Rule 9(b) and "relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*." *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-CV-4044 (BCM), 2021 WL 1227052, at *27 (S.D.N.Y. Mar. 31, 2021).   In addition, an oral contact can be enforceable under New York law contract principles.   *See Fetet v. Altice USA, Inc.*, No. 21CV1512 (DLC), 2021 WL 2941917, at *7 (S.D.N.Y. July 12, 2021) ("Under New York law, 'a binding contract can be formed without the execution of a written agreement.'" (quoting *Delaney v. Bank of Am. Corp*., 766 F.3d 163, 171 (2d Cir. 2014)).

Plaintiffs contend that there is no enforceable written or oral contract between Plaintiffs and Gaborski for the payment of severance and that even if there was, Gaborski failed to satisfy the requisite conditions for receipt of a severance payment.   Specifically, they argue that in order to receive severance, Gaborski was required to be an eligible plan participant, remain employed until the separation date, sign and return the release within 45 days, and not revoke her signature, and that Gaborski did not fulfill these terms clearly set out in the SPP.   (Dkt. 87 at 8).   Of course, as noted above, the Court is unable to resolve at this stage whether the requirements set out in the SPP applied to Gaborski.   Further, she argues that even if they did apply to her, Plaintiffs unjustly terminated her employment, breaching their assurances to pay the severance amounts outlined in the worksheet if she stayed through the end of July, in order to render her ineligible to receive the promised severance.   On the present record, the Court finds that Gaborski has plausibly alleged the

existence of a contract and that Plaintiffs breached it.  Accordingly, the Court will allow Gaborski's breach of contract counterclaim to proceed.

### C.    Promissory Estoppel

Gaborski alleges that Plaintiffs' agreement to pay severance amounted to a clear and unambiguous promise to compensate her if she remained employed through July 31, 2020. She contends that she reasonably relied on this promise by continuing to perform work for Tucker in a stressful work environment and Plaintiffs failed to keep their promise when they terminated her in advance of the separation date and refused to pay severance.

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."  *Thompson v. Combined Sys., Inc.*, No. 6:17-CV-06007(MAT), 2017 WL 2546611, at *10 (W.D.N.Y. June 13, 2017) (quoting *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000)); *see also Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) ("In New York, promissory estoppel has three elements: a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of the reliance." (internal quotation marks omitted)).  "A plaintiff may utilize the doctrine of promissory estoppel in two situations: (1) to enforce a 'promise in the absence of bargained for consideration'; and (2) 'to provide relief to a party where the contract is rendered unenforceable by operation of the Statute of Frauds.'"  *Kant v. Columbia Univ.*, No. 08 Civ. 7476(PGG), 2010 WL 807442, at *4 (S.D.N.Y. Mar. 9, 2010) (quoting *Merex A.G. v.*

*Fairchild Weston Sys.*, 29 F.3d 821, 824 (2d Cir. 1994)).  A party may allege that an enforceable contract exists and alternatively, plead a claim for promissory estoppel in circumstances where it remains in dispute whether a valid contract exists.  *Goldberg v. Pace Univ.*, No. 20 CIV. 3665 (PAE), 2021 WL 1565352, at *12 (S.D.N.Y. Apr. 21, 2021) (citation omitted); *M&B Properties 3 Bushey Lane VT, LLC v. CWCapital Asset Mgmt. LLC*, No. 2:18-CV-4187 PKC RER, 2019 WL 4805149, at *6 (E.D.N.Y. Sept. 30, 2019) (Where "a breach of contract claim and a promissory estoppel claim are pled in the alternative, if the court finds that a contract exists, the promissory estoppel claim must fall.") (quotation omitted)).

"[C]ourts in this Circuit disagree regarding the extent to which New York law permits promissory estoppel claims in the employment context." *Shetel Indus. LLC v. Adin Dental Implant Sys., Inc*., No. 17-CV-2505(SJF)(ARL), 2021 WL 1108666, at *5 (E.D.N.Y. Mar. 23, 2021) (quoting *Christian v. TransPerfect Glob., Inc.*, No. 17-cv-5554, 2018 WL 4571674, at *8 (S.D.N.Y. Sept. 24, 2018) (citing cases)).  While some courts have barred such claims entirely, *see Blodgett v. Siemens Indus., Inc.*, 13 cv 3194 (JMA)(AKT), 2018 WL 385477, at *5 (E.D.N.Y. Jan. 11, 2018) (holding that New York law does not recognize promissory estoppel in the employment context), to the extent that such claims have been permitted to go forward in the employment context, a party must allege a promise that is separate from an employment relationship, *Shetel*, 2021 WL 1108666, at *5.

Here, Gaborski has not alleged any promises made by Plaintiffs that are separate from the employment relationship, and her claim for promissory estoppel fails.  *See id.* at

*6; *Roelcke v. Zip Aviation, LCC*, No. 15 CIV. 6284 (DAB), 2018 WL 1792374, at *12 (S.D.N.Y. Mar. 26, 2018) (dismissing promissory estoppel claim "as there is no promise that arises separate from Plaintiff's alleged employment relationship with Defendants"); *Zakrzewski v. Luxoft USA, Inc*., 151 A.D.3d 573, 574 (1st Dep't 2017) (dismissing promissory estoppel claim arising from failure to pay severance where plaintiff did not allege a duty independent of the employment relationship).  Accordingly, Plaintiffs' motion to dismiss Gaborski's counterclaim for promissory estoppel is granted and that counterclaim is dismissed.

### D.   Unjust Enrichment

Gaborski's counterclaim for unjust enrichment alleges that she performed services for Plaintiffs, including by providing skillful assistance during the transition period, and did so with the understanding that she would receive severance pay if she worked until July 31, 2020.  She contends that Plaintiffs used and benefitted from her services and by terminating her prior to her separation date in order to avoid paying severance, retained those severance funds for themselves.

An unjust enrichment claim under New York law requires that a plaintiff show that the defendant was enriched at the plaintiff's expense and "it is against equity and good conscience to permit defendant to retain what is sought to be recovered."  *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 618 (S.D.N.Y. 2010) (quoting *Am. Med. & Life Ins. Co. v. Crossummit Enters., Inc.*, 27 Misc. 3d 1210(A), 2010 WL 1493136, at *5 (N.Y. Sup. Ct. 2010)).  An unjust enrichment claim "is available 'only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort,

circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Amable v. New Sch.*, No. 20-CV-3811 (KMK), 2021 WL 3173739, at *12 (S.D.N.Y. July 27, 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). "Under New York law, '[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Fetet v. Altice USA, Inc.*, No. 21CV1512 (DLC), 2021 WL 2941917, at *7 (S.D.N.Y. July 12, 2021) (quoting *Corsello*, 18 N.Y.3d at 790-91); *see also Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-CV-432 (JSR), 2021 WL 2667029, at *9 (S.D.N.Y. June 29, 2021) ("However, a plaintiff cannot maintain an unjust enrichment claim when there is a 'valid and enforceable contract between the parties covering the dispute at issue.'" (quoting *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 58 A.D.3d 6, 20 (2d Dep't 2008))).

But a party may plead an unjust enrichment claim in the alternative to its breach of contract claim where there is a "bona fide dispute over the existence of the contract." *Flatscher v. Manhattan Sch. of Music*, No. 20 CIV. 4496 (KPF), 2021 WL 3077500, at *9 (S.D.N.Y. July 20, 2021) (citation omitted); *cf. In re Columbia Tuition Refund Action*, No. 20-CV-3208 (JMF), 2021 WL 790638, at *9 (S.D.N.Y. Feb. 26, 2021) ("[C]ourts in this District have previously dismissed unjust enrichment claims that were indistinguishable from contract claims pleaded in the alternative in the same complaint, at least where the parties did not dispute that they shared a contractual relationship.") (collecting cases).

In this instance, as set forth above, there is a bona fide dispute between the parties as to the existence of a valid contract between them for the payment of severance. Plaintiffs do not concede the existence of an enforceable contract upon which Gaborski's

counterclaims are based, and Gaborski has plausibly pled a claim for unjust enrichment in the alternative to her contract claim. Consequently, Gaborski's unjust enrichment counterclaim may proceed to discovery and Plaintiffs' motion to dismiss this counterclaim is denied.

E.     **New York Labor Law**

On this counterclaim, Gaborski argues that she was legally entitled to additional wages of $6,346.14 as severance and that she is entitled to that amount, plus interest, liquidated damages and attorneys' fees pursuant to Labor Law §§ 190 *et seq*.

Labor Law § 190 defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. Lab. Law § 190. In moving to dismiss Gaborski's Labor Law counterclaim, Plaintiffs argue only that the claim is subject to dismissal because Gaborski failed to timely sign the release and did not experience a qualified separation as required by the SPP. But as set forth above, the Court is unable to resolve at this stage of the proceedings whether the terms of the SPP preclude Gaborski's receipt of severance. Accordingly, Plaintiffs' motion to dismiss this counterclaim resting on these same arguments is similarly denied at this time.

F.     **Intentional Infliction of Emotional Distress**

Gaborski's fifth counterclaim is for intentional infliction of emotional distress. (Dkt. 1 at 27). "The New York state law tort of intentional infliction of emotional distress 'has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4)

severe emotional distress.' . . .  Furthermore, 'New York sets a high threshold for conduct that is "extreme and outrageous" enough to constitute intentional infliction of emotional distress.'" *A.M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp. 2d 660, 690 (E.D.N.Y. 2012) (quoting *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996)), *aff'd sub nom.*, 513 F. App'x 95 (2d Cir. 2013).  The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993)).

Gaborski argues that Plaintiffs' actions of closing the Tucker plant without notice during a worldwide pandemic, unfairly extending her separation date upon learning she had obtained other employment, terminating her four days before she was due to receive severance, and filing this lawsuit against her can support her counterclaim for intentional infliction of emotional distress.  The Court disagrees.  While the facts alleged by Gaborski in her counterclaim may be unfortunate, they do not rise anywhere near the level of conduct so outrageous and extreme to sustain this claim, particularly in the employment context. *See Cummings v. City of New York*, No. 19-CV-7723 (CM)(OTW), 2021 WL 1163654, at *10 (S.D.N.Y. Mar. 26, 2021) ("New York courts are exceedingly wary of claims for intentional infliction of emotional distress in the employment context . . ." (quotation omitted), *reconsideration denied*, No. 19-CV-7723 (CM)(OTW), 2021 WL 1664421 (S.D.N.Y. Apr. 28, 2021)); *Brown v. Montefiore Med. Ctr.*, No. 19 CV 11474 (ALC), 2021 WL 1163797, at *11 (S.D.N.Y. Mar. 25, 2021) ("In the rare instances where the New York

- 16 -

courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery." (quoting *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 604 (E.D.N.Y. 1995)); *see also Nwagboli v. Teamwork Transp. Corp.*, No. 08 Civ. 4562(JGK)(KNF), 2009 WL 4797777, at *5 (S.D.N.Y. Dec. 7, 2009) ("The facts present a routine contract dispute, where one contracting party breached the agreement intentionally. Without more, this conduct cannot be deemed 'truly egregious.'").

Accordingly, because Gaborski has failed to adequately allege a claim for intentional infliction of emotional distress, Plaintiffs' motion to dismiss this counterclaim is granted.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to dismiss Gaborski's counterclaims is denied as to the counterclaims for breach of contract, unjust enrichment, and violation of Labor Law §§ 190 *et seq.*, but granted as to the second counterclaim for promissory estoppel and fifth counterclaim for intentional infliction of emotional distress and those counterclaims are dismissed without prejudice, *see Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (typical practice at motion to dismiss stage is to dismiss claims without prejudice).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        September 28, 2021
              Rochester, New York